UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**DEVONTE C.,**[1]

    **Plaintiff,**

v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 2:21-cv-141
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Devonte C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

On November 19, 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income,[3] alleging that he has been disabled since October 3, 2013.[4] R. 133–34, 187–88, 336–48. The applications were denied initially and upon reconsideration. R. 190–204, 210–15. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 216–24. Administrative Law Judge Lucian Vecchio ("ALJ") held a hearing on May 14, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39–60. In a decision dated July 1, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 30, 2018, Plaintiff's amended alleged disability onset date, through the date of that decision. R. 21–31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 16, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 9, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[5] On June 14, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

II.     LEGAL STANDARD

    A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[3] Plaintiff also filed an application for child insurance benefits, which his counsel later withdrew. R. 21, 24, 30, 43, 349–52.

[4] Plaintiff later amended his alleged disability onset date to November 30, 2018. R. 21–22, 24.

[5] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

5

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

  **B.**  **Sequential Evaluation Process**

  The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

  At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

  At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

  At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 21 years old on November 30, 2018, his amended alleged disability onset date. R. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 24.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: human immunodeficiency virus ("HIV") infection; sleep apnea; bipolar disorder; depressive disorder; anxiety/social anxiety disorder; and substance use disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 24–25.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 25–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a fast food worker. R. 29.

At step five and relying on the testimony of the vocational expert, the ALJ found that a

significant number of jobs–*e.g.*, jobs as a laundry sorter and a folder–existed in the national economy and could be performed by Plaintiff. R. 29–30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 30, 2018, his amended alleged disability onset date, through the date of the decision. R. 30–31.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 16; *Plaintiff's Reply Brief*, ECF No. 22. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21.

### IV.     RELEVANT MEDICAL EVIDENCE

On June 27, 2019, Gita Parikh, M.D., completed a five-page, fill-in-the-blank, and check-the-box form entitled, "Psychiatric/Psychological Impairment Questionnaire." R. 602–06. Dr. Parikh had first treated Plaintiff in 2015 and had most recently examined him on June 25, 2019. R. 602. Dr. Parikh diagnosed major depression, recurrent, noting that Plaintiff had been seen for monthly medication management of prescribed Venlafaxine and Vistaril and weekly individual therapy. *Id.* According to Dr. Parikh, Plaintiff's course of treatment was consistent with his symptoms and with the limitations described in the questionnaire, and she indicated that Plaintiff's diagnoses and limitations were expected to last at least 12 months; she denied that Plaintiff was a malingerer. R. 602–03. Dr. Parikh identified the following signs and symptoms to support her diagnoses and assessment: depressed mood with constricted and irritable affect; feelings of guilt or worthlessness; suicidal ideation; difficulty thinking or concentrating; flight of

ideas; intrusive recollections of a traumatic experience; decreased energy; social withdrawal or isolation; and excessive sleep. R. 603. Dr. Parikh identified Plaintiff's recurrent depressive symptoms and mood swings as frequent and/or severe. R. 604. She denied that Plaintiff had a low I.Q. or reduced intellectual functioning, or that Plaintiff experienced episodes of decompensation or deterioration in a work or work-like setting that caused him to withdraw and/or experience an exacerbation of symptoms. *Id.* According to Dr. Parikh, Plaintiff had good days and bad days. *Id.* Dr. Parikh estimated Plaintiff's ability to perform mental activities in a competitive environment on a sustained and ongoing basis (8 hours per day, 5 days per week) using the following scale: None (symptoms do not interfere with ability); mild (symptoms rarely interfere with ability); moderate (symptoms occasionally—up to one-third of an eight-hour workday—interfere with ability); moderate-to-marked (symptoms frequently—one-third to two-thirds of an eight-hour workday—interfere with ability; and marked (symptoms constantly—more than two-thirds of an eight-hour workday—interfere with ability). R. 605. Dr. Parikh opined that Plaintiff had moderate-to-marked limitations in his ability to maintain attention and concentration for extended periods and to sustain ordinary routine without supervision; he had marked limitations in the following areas: in his ability to perform activities within a schedule and consistently be punctual; work in coordination with or near others without being distracted by them; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; interact appropriately with the public; get along with coworkers or peers without distracting them; maintain socially appropriate behavior; respond appropriately to workplace changes; travel to unfamiliar places or use public transportation; set realistic goals; and make plans independently. *Id.* According to Dr. Parikh, Plaintiff also experienced low energy and an unstable mood. R. 606. Dr. Parikh opined

that, on average, Plaintiff is likely to be absent from work more than three times per month as a result of his impairments or treatment. *Id*. Moreover, Plaintiff's symptoms and related limitations applied as far back as August 1, 2018. *Id*. According to Dr. Parikh, Plaintiff's symptoms were reasonably consistent with the clinical and/or objective findings discussed in her report. *Id*.

**V.    DISCUSSION**

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Parikh's opinions. *Plaintiff's Brief*, ECF No. 16; *Plaintiff's Reply Brief*, ECF No. 22. This Court agrees.

The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter,* 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§

---

[6] As previously noted, Plaintiff's claims were filed on November 19, 2018.

404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

11

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at §§ 404.1520c(b), 416.920c(b).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but with additional limitations. He can perform only simple, routine, repetitive work; with no quota or high production work; with less than occasional change in his work routine; and with little interaction with supervision, coworkers, and the public. He can perform only work at which he could be off-task five percent of the workday.

R. 25. In reaching this determination, the ALJ found, *inter alia*, that Dr. Parikh's opinions were "somewhat persuasive," reasoning as follows:

> On June 27, 2019, Dr. Grita[7] completed a psychiatric/psychological impairment questionnaire noting the claimant has recurrent depression and anxiety with mood swings and episodes of withdrawal behavior, low energy, and decreased appetite. Dr. Grita indicated several marked check-offs for limitations in "Concentration and Persistence," "Social Interaction," and "Adaptation" (Exhibit B8F). I find Dr. Grita's assessment/opinion at Exhibit B8F is only somewhat persuasive, as it is not fully supported by or consistent with the record as a whole.

R. 28.

Plaintiff challenges the ALJ's consideration in this regard, arguing that the ALJ's conclusory assertion with no accompanying explanation or citation to the record was inadequate under the applicable regulations. *Plaintiff's Brief*, ECF No. 16, pp. 14–15, 17–18, 20–21.

---

[7] The ALJ mistakenly referred to Dr. Parikh as "Dr. Grita." R. 28.

12

Plaintiff also contends that the ALJ failed to identify which of Dr. Parikh's findings he rejected and which he accepted when he found the opinions to be "somewhat persuasive." *Id*. at 15. Plaintiff goes on to argue, *inter alia*, that the ALJ's failure to explain his findings in this regard is not harmless because some of Dr. Parikh's findings, if credited, would, according to the vocational expert, be work preclusive. *Id*. at 15–16 (citing R. 54–57).

For her part, the Acting Commissioner concedes that the ALJ "did not flesh out the evidence showing the lack of support/consistency in the paragraph analyzing Dr. Parikh's opinion[,]" but the Acting Commissioner nevertheless contends that "in his step three finding, the ALJ identified and discussed the evidence that supports his rationale (Tr. 24-25)." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21, pp. 7–8. The Acting Commissioner specifically points to the ALJ's finding that Plaintiff's mental impairments were not severe enough to satisfy the paragraph "B" criteria necessary to meet Listings 12.04 and 12.06 because the ALJ found that Plaintiff had only moderate limitations in the four broad areas of mental functioning. *Id*. at 8–9 (citing R. 24–25). The Acting Commissioner argues that the opinions of the state agency reviewing consultants, whose opinions the ALJ credited, support these moderate findings. *Id*. at 9 (citing R. 24–25, 28). The Acting Commissioner further argues that certain evidence noted by the ALJ at step four—Dr. Parikh's examination in May 2019 wherein, *inter alia*, Plaintiff denied depression, anxiety, mood swings, hallucinations, paranoid ideation, agitation, and suicidal/homicidal ideation—also "constitutes the substantial evidence . . . to support his [the ALJ's] assessment that Dr. Parikh's opinion was not consistent with or supported by the record and, thus, only somewhat persuasive." *Id*. at 9–10 (citing R. 27, and arguing further that additional examination findings by Dr. Parikh in May 2019, not noted by the ALJ, also support the ALJ's consideration of this physician's opinion). The Acting

13

Commissioner also insists that the existence of contrary evidence in the record does not undermine the ALJ's decision. *Id.* at 10.

In reply, Plaintiff argues that the Acting Commissioner's argument amounts to impermissible *post hoc* rationalization and incorrectly relies on evidence from step three to support the ALJ's findings at step four. *Plaintiff's Reply Brief*, ECF No. 22.

The Court concludes that this issue requires remand. The new regulations promulgated by the Social Security Administration set forth a "minimum level of articulation" to be provided in determinations and decisions, in order to "provide sufficient rationale for a reviewing adjudicator or court." 82 FR 5844-01. *See also* 20 C.F.R. §§ 404.1520c(b) and 416.920c(b)). The ALJ's assessment of Dr. Parikh's opinion made "no effort to compare or support [her] opinions with the record. . . . The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors[.]" *Brownsberger v. Kizakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022). The ALJ simply concluded that Dr. Parikh's opinion was only "somewhat persuasive" because it was "not fully supported by or consistent with the record as a whole." R. 28. The ALJ provided no citation to the record in support of this conclusion, nor did he explain how he considered the required factors of supportability and consistency. *Id*. This failure to provide a "minimum level of articulation" prevents this Court from determining whether substantial evidence supports the ALJ's decision. *See Brownsberger*, 2022 WL 178819, at *6–7.

Some courts have found that procedural error in failing to expressly consider these factors may be harmless if the Court can "glean" how the ALJ considered the supportability and consistency of the expert's opinion and if a "searching review" of the record confirms that the

ALJ did not violate the applicable regulations. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (stating that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" but that "[d]espite the ALJ's procedural error, we could affirm if 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (cleaned up). However, in the present case, the ALJ acknowledged, *inter alia*, that, notwithstanding an unremarkable examination in November 2018, R. 27, and in May 2019,[8] Plaintiff had passing suicidal thoughts in February 2019, *id.*; Plaintiff presented to an emergency department for crisis evaluation in March 2019 following a verbal altercation with a cousin in which Plaintiff hit his cousin with a lamp, R. 27 (noting Plaintiff stated that he had acted out of frustration and did not know that the lamp would hit his cousin); and a depression screening in September 2019 revealed that Plaintiff experienced little interest or pleasure in doing things, felt down, depressed, and hopeless and received, *inter alia*, a GAD-7[9] score of 19, which reflected severe anxiety, R. 28; *see also* R. 608 (reflecting additional notes from that September 2019 screening that Plaintiff "[s]ays he gets suicidal ideation sometimes but he never tried anything to hurt himself"). The limited explanation provided by the ALJ without detailing how he considered the consistency and supportability

---

[8] The ALJ mistakenly referred to a medication management appointment in April 2019 with a "Dr. Forbes[,]" which was really an appointment with Dr. Parikh in May 2019. R. 28, 653.

[9] "GAD-7 is a clinical tool for screening for generalized anxiety disorder ("GAD") and assessing its severity, with a GAD-7 score of 10 or greater indicating the presence of the disorder." *Throw v. Kijakazi*, No. 3:21-CV-170-JPK, 2022 WL 4592022, at *9 n.19 (N.D. Ind. Sept. 30, 2022) (citations omitted). "A GAD-7 score of 15-21 represents severe levels of anxiety." *Id*. (citations omitted); *see also Walker v. Kijakazi*, No. 6:21-CV-3235-NKL, 2022 WL 3036639, at *6 (W.D. Mo. Aug. 1, 2022) ("The GAD-7 is used to screen for and assess the severity of generalized anxiety disorder. Scores between 15 and 21 are indicative of severe anxiety.") (citations omitted).

15

factors therefore does not allow this Court to understand and assess the basis for the ALJ's decision to find Dr. Parikh's opinion "not fully supported by or consistent with the record as a whole." R. 28; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Brownsberger*, 2022 WL 178819, at *7 ("The ALJ fails to clearly explain how Dr. Surapaneni's opinion is consisting [sic] or inconsistant with the record, thus failing to provide 'a clear and satisfactory explication of the basis on which it rests.'") (quoting *Cotter*, 642 F.2d at 704, 706-707).

The Acting Commissioner nevertheless contends that the ALJ's finding that the state agency consultants' moderate findings were persuasive provides substantial support for the ALJ's consideration of Dr. Parikh's opinion. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21, pp. 9–10. This Court disagrees. As an initial matter, the ALJ referred to these state agency findings at step three, R. 24–25, and at step four in connection with a different opinion, R. 28. In any event, after noting Dr. Parikh's marked limitations, the ALJ expressly found this opinion "somewhat persuasive[,]" apparently meaning that he did not reject Dr. Parikh's opinion outright but found at least some portion of the opinion, which included marked limitations, persuasive. R. 28. Moreover, the ALJ's reliance on the state agency experts' opinions does not clarify which of Dr. Parikh's marked limitations—or other restrictions—the ALJ found persuasive or unpersuasive. R. 24–25, 28. In other words, the ALJ's cursory explanation still fails to articulate which restrictions he accepted and which he rejected from Dr. Parikh's opinion. Fundamentally, the ALJ's failure to adequately explain how he considered the factors of consistency and supportability in his evaluation of Dr. Parikh's opinion frustrates this Court's ability to determine whether substantial evidence supports that evaluation and, ultimately, the ALJ's disability determination.

Furthermore, the Court cannot conclude that the ALJ's failure to explain his evaluation of Dr. Parikh's opinion is harmless. As previously detailed, Dr. Parikh opined that Plaintiff was markedly limited in his ability to, *inter alia*, perform activities within a schedule and consistently be punctual; complete a workday without interruptions from psychological symptoms; and perform at a consistent pace without rest periods of unreasonable length or frequency, R. 605, and that Plaintiff would likely be absent from work more than three times per month, R. 606. The vocational expert testified that a limitation to understanding and remembering only one to two-step instructions up to one-third of an eight-hour day would be work preclusive, R. 56, and that being absent from work three or more times per month as a result of impairments or treatment would also be work preclusive, R. 57.

This Court concludes that, under these circumstances, remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits.[10] *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural

---

[10] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Parikh's opinion and the RFC, the Court does not consider those claims.

activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Acting Commissioner must be reversed, and the matter must be remanded for further consideration of these issues.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 6, 2023                                *s/Norah McCann King*
                                                  NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE